**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 220439-U

Order filed August 21, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 21st Judicial Circuit, Kankakee County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-22-0439 Circuit No. 21-CF-277 |
| | ) | |
| BRYCE HUBBELL, | ) ) | Honorable William S. Dickenson, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE BRENNAN delivered the judgment of the court.
Justices Hettel and Davenport concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:  (1) The court's inquiry into defendant's claim of ineffective assistance of counsel was incomplete. (2) Defendant's sentence was not an abuse of discretion.

¶ 2     Defendant, Bryce Hubbell, appeals from his convictions and sentences for aggravated domestic battery and domestic battery, arguing the Kankakee County circuit court erred where it (1) improperly treated an inquiry pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984), as an evidentiary hearing and did not appoint new counsel, and (2) sentenced defendant without adequately considering the evidence in mitigation. We affirm and remand with directions.

¶ 3                                    I. BACKGROUND

¶ 4         On April 23, 2021, a grand jury indicted defendant on counts of aggravated kidnapping (720 ILCS 5/10-2(a)(3) (West 2020)), criminal sexual assault (*id.* § 11-1.20(a)(2)), aggravated domestic battery (*id.* § 12-3.3(a-5)), domestic battery (*id.* § 12-3.2(a)(1)), and battery (*id.* § 12-3(a)(1)). The case proceeded to a jury trial on February 14, 2022.

¶ 5         The evidence established the following. Hannah Soper was in a dating relationship with defendant. Soper's twenty-first birthday was on April 1, 2021. That day, Soper went to the home of her mother, Melissa Helgeson, with defendant and his stepfather. The four of them consumed alcohol and cocaine. Soper, defendant, and defendant's brother, Chaise Terrell, went to various bars for her birthday. Defendant was 20 years old and could not enter some of the bars, which angered him. The bouncers at one bar called the police for defendant being "abusive." While the police were talking to defendant, Soper and Terrell left and drove to a gas station. Soper fell asleep on the way and woke up to defendant dragging Terrell out of the car. Defendant struck Terrell and got into the driver's seat of the car. Defendant became aggressive and started yelling at Soper and slapping and punching her. Defendant drove them to a more rural area and strangled Soper, causing her to lose consciousness. Defendant kicked Soper out of the car and drove off. Soper began walking and defendant returned approximately 10 to 15 minutes later. Soper got back into the car, and defendant drove her back to Helgeson's house, though Soper begged to be taken to the hospital.

¶ 6         Meanwhile, an officer was dispatched to the gas station and observed Terrell with a swollen eye and bleeding from his left ear. After speaking with Terrell, the officer went to Helgeson's house and told her that he had received a report that Soper may have been taken against her will. Helgeson was confrontational with the officer, and he was unable to locate Soper.

2

¶ 7    Soper stated that the next thing she remembered was "coming to in [Helgeson's] bed and trying to run out and getting dragged back in." Soper's tampon was next to her on the bed, and she was not sure whether she had been sexually assaulted by defendant. Defendant was next to her in the bed. Soper went back to sleep, and when she woke in the morning defendant slapped and punched her "to the point where [her] lip was busted and [she] started spitting blood everywhere." Defendant left his cell phone on the bed next to Soper while he went to talk to Helgeson. At that point, only defendant, Soper, and Helgeson were in the house. Soper then texted her father for help. Defendant hit Soper when he discovered that she used his phone.

¶ 8    Ultimately, Soper was taken to the hospital. She could hardly walk, had a black eye, and the side of her face was swollen. Soper was given the option to obtain a sexual assault kit at the hospital, but she refused. After examining Soper at the hospital, the doctor believed that she had been the victim of strangulation and further indicated that direct blunt force trauma could produce bruising such as Soper's. Photographs entered into evidence showed significant bruising to Soper's face and body. Defendant had previously been convicted of aggravated domestic battery for strangling Soper on March 30, 2021.

¶ 9    Defendant's videotaped interview was played for the jury. In it, defendant denied battering Soper, relating instead that Helgeson battered Soper and that he had broken up their fight. Defendant further contended that Soper was so drunk that she fell down some stairs. Defense counsel's theory of the case was that Helgeson was the person who battered Soper and that Soper was too intoxicated to recall what happened. Consistent with this theory, defendant's cousin, Michael O'Connor, testified that, on the night in question, between leaving the gas station and arriving at Helgeson's home, defendant came to his apartment in Manteno around midnight and knocked on the door. When O'Connor opened the door, he saw Soper sitting in her car. She was

3

awake and did not appear to be in any distress. Defense counsel argued that this demonstrated that Soper had not been battered at that point in the evening and, had she believed she was being abused and kidnapped, she would have tried to escape while defendant visited with O'Connor. The jury found defendant guilty of aggravated domestic battery and domestic battery, but not guilty of aggravated kidnapping and criminal sexual assault.

¶ 10    A sentencing hearing was held on May 6, 2022. Defendant's presentence investigation report (PSI) indicated that he had previous juvenile adjudications for arson, criminal trespass to property, and burglary and prior convictions for aggravated domestic battery, resisting a peace officer, and unlawful possession of a controlled substance. Defendant lived with Soper at the time of the offenses in this case. The PSI indicated that defendant described his childhood as abusive and "drug filled." Defendant was sexually and physically abused. His mother, uncle, and grandmother died from drug use. A Department of Children and Family Services evaluation indicated that, when defendant was 12 years old, he began sexually abusing his sisters who were 5 and 9 years old. Defendant attempted to have sexual intercourse with his nine-year-old sister by force and threatened to kill her if she did not comply. Defendant reported that he first consumed alcohol when he was 6 years old and began using marijuana when he was 9 or 10 years old. He began using cocaine when he was 18 or 19 years old and had tried most drugs. Defendant indicated that he needed substance abuse treatment and a mental health evaluation.

¶ 11    The State argued that there were no statutory mitigating factors that applied, noting that these offenses were committed 48 hours after defendant was released from jail on a probation sentence for the previous aggravated domestic battery against Soper. For aggravating factors, the State argued that defendant had a criminal history and committed a felony while on probation for a felony. The State asked for 12 years' imprisonment. Defense counsel argued that Soper was not

4

credible and noted that defendant "was born into a horrible situation, one of a household that was rife with drug use, prostitution, physical abuse, [and] emotional abuse." Counsel indicated that defendant was young and had never been to prison. Defendant gave a statement in allocution, in which he indicated that he was sober and working towards being a better person.

¶ 12 The court stated that it considered all the evidence presented. It noted that none of the statutory factors in mitigation applied but there was other mitigating evidence. The court found that the circumstances were likely to reoccur since defendant was released with a no contact order prohibiting him from contacting Soper yet violated that order and his probation immediately. The court agreed with the factors in aggravation argued by the State, discussing defendant's criminal history. The court noted that the injuries to Soper were substantial, stating, "This was not a gentle misunderstanding, but this was in fact a beating." The court discussed the PSI, noting that defendant's upbringing was "troubling" and his statement in allocution provided some insight, both of which were mitigating.

¶ 13 The court stated,

> "The fact—the fact that this occurred so quickly after you had been released from jail, you had been in from the offense date on the older case. I think he was in for about two months while that case was pending. You were arrested I believe on—on or about January 18th of 2021. You were sentenced to domestic violence probation on March 30th of 2021, so did more than two months in jail during that time.
>
> You were released on domestic violence probation with a specific recommendation—not a recommendation, a specific order that you not have

contact with Miss Soper. You violated it and apparently within at least 24 hours or so, and then within 48 hours of that order you were beating the heck out of her.

I don't have any reason to doubt the sincerity of what you've told me today. I don't. But having sincere intentions and being able to make good on those sincere intentions are unfortunately sometimes two different things."

The court continued,

"[T]his is a serious offense. Frankly, I think there is a good deal of fortune that we are not here on a murder sentencing as opposed to an aggravated domestic battery, which is a serious—a very serious offense as it is.

The State's recommendation of 12 years, given what occurred to Miss Soper and the recency with which you have just been ordered not to contact her, I cannot say by any stretch of the imagination is an unreasonable request. It's close to the high end. What you did cries out for a sentence above and beyond boot camp.

With that being said, [defendant], I do again believe that you were very sincere in your allocution statement. I believe that you wish to change. I believe that you wish to get better. I have to balance that by what I believe is the necessity to protect the public, or next time who knows how much worse it could be?

So because of your allocution, I don't believe that the State's recommendation is one that I am going to follow. It is an 85 percent sentence. It's a harsh sentence, but what you did was a harsh crime and I do feel that an extended term sentence is necessary."

The court sentenced defendant to 10 years' imprisonment for aggravated domestic battery and a concurrent 3 years' imprisonment for domestic battery.

¶ 14     On May 16, 2022, defendant filed a *pro se* motion alleging ineffective assistance of counsel. The motion alleged, *inter alia*,[1] that counsel failed to call Eric Quaintance to testify at trial who "could or would have provided information and facts that could or would have changed the verdict." Defendant also stated that the court did not take into consideration his rehabilitative potential. Counsel and the State appeared in court on June 8, 2022. Counsel stated that his motion could also be construed as a motion to reconsider sentence, which it would adopt. The court set the matter for a *Krankel* hearing to determine if "outside counsel should be appointed."

¶ 15     A hearing was held on November 3, 2022. The court asked defendant to discuss his contentions. Defendant stated that Quaintance's name was in the police report, but he was never contacted. Defendant presented an affidavit from Quaintance. The affidavit stated,

> "I Eric Quaintance, stepfather of [defendant] am willing and wanting to testify at [defendant's] trial. I was never contacted by [defendant's] attorney to testify. I Eric Quaintance was there the night this all supposedly happened. [Defendant] did not put his hands on [Soper], there was a physical altercation between [Soper] and [Helgeson], I walked into [Helgeson's] house and they were physically fighting, not [defendant and Soper], but between [Helgeson and Soper]. When I walked in the room I witnessed [Helgeson] choking [Soper]. I got in between them at that time [Helgeson] grabbed her by the hair and started punching her, until I pulled her off of [Soper]. There was a verbal altercation between [defendant and Soper], but at *no time* did [defendant] have a physical altercation. I only witnessed [Helgeson]

---

[1]While defendant raised other issues in his motion, defendant has abandoned any contention relating to these issues on appeal.

attacking her, until I finally sep[a]rated them. Thank You for time [*sic*]!" (Emphasis in original.)

¶ 16 Counsel responded, "Eric Quaint[a]nce is news to me. *I don't believe* he's mentioned anywhere in the police reports. *I don't recall discussing him* with [defendant]." (Emphasis added.) Counsel indicated that he and defendant had discussed the witnesses that they would subpoena to testify. Counsel said that he had never seen Quaintance's affidavit and stated,

> "The stuff in there about him being present and seeing what happened is all news to me. And I guarantee that if I had known about that he existed and that he had these things to say, then I would have tracked him down. But I didn't know about him until now."

¶ 17 The court ruled, "I am going to find that at this time there is no reason to appoint outside counsel into this case. I am not finding anything that indicates that [defense counsel] was anything other than diligent in this matter. I find credibility in his explanation regarding Mr. Quaint[a]nce." The court further denied defendant's motion to reconsider sentence.

¶ 18                                    II. ANALYSIS

¶ 19 On appeal, defendant argues the court (1) "erred when it refused to appoint new counsel and improperly treated the *Krankel* inquiry as an evidentiary hearing," and (2) abused its discretion in sentencing defendant without adequately considering his youth, rehabilitative potential, and difficult upbringing. We consider each argument in turn.

¶ 20                                 A. *Krankel* Inquiry

¶ 21 When a defendant raises a posttrial allegation of ineffective assistance of counsel, the circuit court must follow the procedure set forth in *Krankel*, 102 Ill. 2d 181, and its progeny. Initially, the court should examine the factual basis of defendant's claim, and "some interchange

8

between the trial court and trial counsel regarding the facts and circumstances surrounding the allegedly ineffective representation is *** usually necessary in assessing what further action, if any, is warranted on a defendant's claim." *People v. Moore*, 207 Ill. 2d 68, 78 (2003). "If the trial court determines that the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny the *pro se* motion. However, if the allegations show possible neglect of the case, new counsel should be appointed." *Id.*

¶ 22     The point of *Krankel* proceedings is to promote consideration of a defendant's ineffective assistance allegations in the circuit court and potentially limit issues on appeal. *People v. Patrick*, 2011 IL 111666, ¶ 41. Thus, "even in preliminary *Krankel* inquiries, a trial court must be able to consider the merits *in their entirety* when determining whether to appoint new counsel." (Emphasis in original.) *People v. Roddis*, 2020 IL 124352, ¶ 61. We consider *de novo* the question of whether the court properly conducted a preliminary *Krankel* inquiry. *People v. Jolly*, 2014 IL 117142, ¶ 28. However, where the court conducts a proper inquiry and makes a determination on the merits of defendant's claim of ineffective assistance, we will reverse only if the court's decision is manifestly erroneous. *People v. Jackson*, 2020 IL 124112, ¶ 98. "Manifest error is error that is clearly evident, plain, and indisputable." *Id.*

¶ 23     At the outset, defendant argues that the court failed to conduct a *Krankel* inquiry, stating that it instead held an evidentiary hearing. We disagree. At a *Krankel* inquiry, the court considers the merits of defendant's claim in their entirety, as it did here. *Roddis*, 2020 IL 124352, ¶ 61. The court properly discussed with defendant his contentions of error and then gave counsel the opportunity to respond. While defendant states that the court "treated it as a credibility contest, in which the court took the word of counsel over defendant," that was not the case. The court never

9

indicated that it found defendant incredible. Rather, it found "credibility in his explanation regarding Mr. Quaint[a]nce."

¶ 24    Nonetheless, we find that the court's inquiry was incomplete. "We emphasize that this court is concerned not only with whether the trial court conducted an inquiry, but also whether said inquiry was *adequate*. If a trial court conducts an inadequate *Krankel* inquiry, then the inquiry does not meet the purpose of the rule." (Emphasis in original.) *People v. McLaurin*, 2012 IL App (1st) 102943, ¶ 44.

¶ 25    Here, defense counsel's theory of the case was that Helgeson, and not defendant, battered Soper. Thus, any witnesses present for the altercation should have been investigated by defense counsel. Quaintance's affidavit indicated that he was present on the night in question, saw Helgeson and Soper have a physical altercation, and was never contacted by counsel. Defendant alleged that Quaintance's name was included in the police report and should have been investigated by counsel. Counsel stated that, "Eric Quaint[a]nce is news to me. I don't believe he's mentioned anywhere in the police reports." This equivocal response to defendant's definitive statement that Quaintance's name was in the police report was insufficient to allow the court to determine that counsel was not potentially ineffective. If his name was in the police report and counsel did not investigate, counsel was potentially ineffective. The court should have conducted a more thorough inquiry to determine defendant's basis for his statement that Quaintance's name was in the police report, whether counsel was able to definitively answer whether Quaintance's name was in the police report, and whether he should have investigated further. Without this exchange neither the circuit court nor this court on appeal can make a determination as to the ineffectiveness as we have no definitive basis to conclude what if anything was in the police report regarding Quaintance.

¶ 26    *McLaurin*, 2012 IL App (1st) 102943, ¶¶ 45-53, provides guidance on how to proceed where an inadequate inquiry is made at the *Krankel* hearing. In *McLaurin*, the defendant raised a posttrial claim of ineffective assistance of counsel after his second trial, based on counsel's failure to subpoena a witness. *Id.* ¶ 34. During the *Krankel* inquiry, counsel indicated that he found the name of the witness in the police report, talked to him on the phone, and the witness indicated that he would be in court for trial. *Id.* Based on that, the court found that counsel did not neglect his duties. *Id.* The First District remanded for a more developed *Krankel* inquiry. *Id.* ¶ 53. In doing so, it noted that there was nothing in the record to indicate that counsel had attempted to locate the witness for the second trial. *Id.* ¶ 46. The court stated,

> "the information discussed during the trial court's inquiry was already known to the trial court and was not in dispute. What was in dispute was whether defense counsel made *any* effort to locate [the witness] for [the defendant's] *second* trial. In fact, the trial court was critical of defense counsel's efforts to locate [the witness] for the first trial. Nothing in the record suggests that defense counsel had done anything different for the second trial. Yet, the trial court did not inquire about defense counsel's efforts to locate [the witness] for [the defendant's] second trial and, the record reveals nothing regarding defense counsel's efforts in that regard. Thus, we are unable to evaluate [the defendant's] claims of ineffective assistance of counsel because the trial court's *Krankel* inquiry was incomplete." (Emphases in original.) *Id.* ¶ 52.

Accordingly, the court remanded "for the limited purpose of allowing the trial court to make a more complete inquiry into the efforts taken by defense counsel to investigate [the potential]

11

witness and secure his testimony for the second trial." *Id.* ¶ 53. Likewise, we remand for a more complete *Krankel* inquiry into the police report as it relates to Quaintance.

¶ 27 In remanding this case, we note that, after an adequate preliminary inquiry, the court may base its *Krankel* decision on either the factual or legal merits of defendant's claim of ineffective assistance of counsel. *Roddis*, 2020 IL 124352, ¶¶ 55, 61. Previously, the court solely considered the factual merits of defendant's claim and based its decision on an incomplete inquiry. On remand, the court is again free to consider both the factual and the legal merits of defendant's ineffective assistance claim.

¶ 28                                                  B. Sentencing

¶ 29 Next, defendant contends that the court did not adequately consider his youth, rehabilitative potential, and difficult upbringing when sentencing him to 10 years' imprisonment. The circuit court's sentencing decisions are entitled to great deference and will not be altered absent an abuse of discretion. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). We give the court such deference because it is in the best position to determine the appropriate sentence as it has had the opportunity to weigh defendant's credibility, demeanor, moral character, mentality, environment, and age. *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). A sentence that falls within the statutory range is not an abuse of discretion unless it is manifestly disproportionate to the nature of the offense or greatly at variance with the spirit and purpose of the law. *Alexander*, 239 Ill. 2d at 215.

¶ 30 It is up to the circuit court to balance the relevant factors in mitigation and aggravation and make a reasoned decision as to the appropriate sentence. *People v. Latona*, 184 Ill. 2d 260, 272 (1998). The court cannot ignore a pertinent mitigating factor (*People v. Powell*, 2013 IL App (1st) 111654, ¶ 35), although the weight to be given to each factor depends on the facts and circumstances of each case. *Alexander*, 239 Ill. 2d at 213. When mitigating evidence is before the

12

circuit court, it is assumed that the court considered it, unless the record indicates otherwise. *People v. Burton*, 184 Ill. 2d 1, 34 (1998). On appeal, it is not our duty to reweigh the factors involved in the circuit court's sentencing decision. *People v. Coleman*, 166 Ill. 2d 247, 261-62 (1995).

¶ 31 Here, defendant's 10-year sentence was within the applicable extended-term range (720 ILCS 5/12-3.3(b) (West 2020)) and is presumptively valid. See *Stacey*, 193 Ill. 2d at 209. Defendant's argument amounts to an invitation to reweigh the evidence, which we will not do. See *Coleman*, 166 Ill. 2d at 261-62. When rendering its decision, the court indicated that it considered all the evidence before it. The court was aware of defendant's age. It took the time to consider the evidence in aggravation and mitigation, including defendant's upbringing, and indicated that it found such evidence mitigating, which is why the court did not agree to the State's recommended sentence of 12 years. However, the court considered the seriousness of the offense and the fact that defendant committed these offenses just days after being released on probation for a similar offense against the same victim. The seriousness of the offense is the most important factor when sentencing. *People v. Murray*, 2020 IL App (3d) 180759, ¶ 30. "The trial court need not give greater weight to any potential for rehabilitation than to the seriousness of the offense." *Id.* ¶ 33. The record shows that the court did not merely give "lip service" to the mitigating evidence, as defendant contends. Though defendant may believe the mitigating evidence should have been given more weight and warranted a lesser sentence, the court was not required to agree. Viewed in the totality, we cannot say that defendant's sentence was "greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense." *People v. Fern*, 189 Ill. 2d 48, 54 (1999).

¶ 32 In coming to this conclusion, we reject defendant's reliance on *Miller v. Alabama*, 567 U.S. 460, 471-72 (2012), and its progeny for the proposition that he should have been given a lesser

13

sentence based on his youth. Defendant has cited no case law that applies *Miller* principles to a 20-year-old defendant who only received a 10-year sentence.

¶ 33                                  III. CONCLUSION

¶ 34        The judgment of the circuit court of Kankakee County is affirmed and remanded with directions.

¶ 35        Affirmed and remanded with directions.